```
                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| IN RE CENTRAL EUROPEAN DISTRIBUTION CORP. SECURITIES LITIGATION | Civil Action No. 11-6247 (JBS/KMW)  **MEMORANDUM OPINION** |

**SIMANDLE**, District Judge:

This matter comes before the Court upon the Prosperity Group's Motion For 28 U.S.C. § 1292(b) Immediate Interlocutory Appeal [Docket Item 62] of the Court's August 22, 2012 Opinion and Order Appointing Lead Plaintiff [Docket Items 60, 61]. The Prosperity Group's motion will be denied because the Court finds as follows:

1. On August 22, 2012, the Court issued an Opinion and Order appointing the Arkansas Public Employees Retirement System and the Fresno County Employees' Retirement Association ("Arkansas & Fresno") as lead plaintiffs for this action. The Prosperity Group had applied to be lead plaintiff and had been the presumptive lead plaintiff because it had suffered the greatest alleged financial losses. But the Court did not select the Prosperity Group because it was subject to several unique defenses that would prejudice the class, as explained in the Opinion and Order.

2. The Private Securities Litigation Reform Act ("PSLRA") outlines a process for selecting a lead plaintiff. The Court must

presume that the most adequate plaintiff is the plaintiff with the greatest financial interest. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The presumption may be rebutted upon proof that the presumptively most adequate plaintiff is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

  3. Arkansas & Fresno rebutted the presumption that the Prosperity Group should be lead plaintiff because the Prosperity Group was subject to unique defenses. The Court held that at least five Prosperity Group members were subject to unique defenses regarding their standing because an investment advisor brought the claims, even though the investment advisor had no ownership interest in the claims. The Prosperity Group also argued that the Court should select the underlying entities, the Subsidiaries, that had an ownership interest in the claims. But the Court found that the Subsidiaries could be subject to unique defenses because they did not timely file a motion for appointment as lead plaintiff and did not file the certification required by the PSLRA.

  4. In addition, there was another issue regarding the Subsidiaries' appointment: The August 22, 2012 Opinion addressed a Report and Recommendation filed by Magistrate Judge Karen M. Williams on June 13, 2012 [Docket Item 49]. The R&R recommended that Arkansas & Fresno should be appointed lead plaintiff. The

Prosperity Group's first suggestion that the Subsidiaries alone (as opposed to the Subsidiaries combined with other entities that lacked standing) should be appointed came in the Objections to the R & R, and not in any prior submission. The Court held that parties must raise all of their arguments when they are before the Magistrate Judge: "Common sense and efficient judicial administration dictate that a party should not be encouraged to make a partial presentation before the magistrate on a major motion, and then make another attempt entirely when the district judge reviews objections to an adverse recommendation issued by a magistrate." Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp., CIV.A. 11-6247 JBS, 2012 WL 3638629, *13, n.5 (D.N.J. Aug. 22, 2012) (quoting Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 177 F.R.D. 205, 211 (D.N.J. 1997)).

    5.   Under 28 U.S.C. 1292(b), a district judge has the power to certify an order that is otherwise non-appealable for interlocutory appeal. The following conditions must be met for a § 1292(b) certification: (1) The order must involve a controlling question of law; (2) as to which there is a substantial ground for a difference of opinion, and (3) the final resolution of the appeal must have the potential to materially advance the determination of the litigation. P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F.Supp. 2d 355, 357-358 (D.N.J. 2001) (citing

Katz v. Carte Blanche Corp._,_ 496 F.2d 747, 753 (3d Cir. 1974) and 28 U.S.C. § 1292(b)). Section 1292(b) should be "sparingly applied" and "used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation." Milbert v. Bison Laboratories, Inc., 260 F.2d 431, 433 (3d Cir. 1958). Section 1292(b) certification "is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present." Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976).

6.  The Prosperity Group asked the Court to certify four questions:

> (1) what showing must a class member make in order to provide the 'proof' mandated under the [PSLRA] to demonstrate the presence of a unique defense sufficient to rebut the presumption of most adequate plaintiff;
> (2) can a movant group meet its burden of 'proof' despite submitting no authority or evidence to support its argument that a principal loses authority to act if it grants power of attorney to an agent;
> (3) is a group member's motion timely when it timely moves as part of a lead plaintiff group or must it make a separate individual motion for lead plaintiff appointment within the 60-day time limit proscribed by the PSLRA in order to be considered for appointment individually; and
> (4) whether an investment advisor has standing to pursue claims to recover losses sustained in its clients' accounts where it was given an express power of attorney by its clients.

(Prosperity Group Mot. Interlocutory Appeal at 1-2.)

7.  None of these questions merit certification. First, none of these questions will materially advance the termination

4

of this litigation. Other courts have held that lead plaintiff questions do not merit § 1292(b) certification because "[t]he time required to conclude the litigation is solely a function of the number and extent of the contested issues of fact and law arising out of the underlying merits of the claims and defenses; these do not change with the identity of the lead plaintiffs." In re Oxford Health Plans, Inc., 182 F.R.D. 51, 53 (S.D.N.Y. 1998); see also In re Spectranetics Corp. Sec. Litig., 08-CV-02048-REB-KLM, 2009 WL 4268291, *4 (D. Colo. Nov. 19, 2009) (denying § 1292(b) certification because "resolution of the claims at issue in this case are not dependent on who is designated as the lead plaintiff"). In addition, the Prosperity Group has never alleged that its claims would be prejudiced by Arkansas & Fresno's service as lead plaintiff. In the August 22, 2012 Opinion, the Court noted that "[t]he Prosperity Group has not alleged that Arkansas is subject to unique defenses, nor has it made any other challenge to Arkansas' ability to serve as lead plaintiff." Steamfitters Local at *13.

8. The Prosperity Group cites two inapposite cases in support of its argument interlocutory review by the Third Circuit will materially advance this litigation: In re Cavanaugh, 306 F. 3d 726 (9th Cir. 2002) and In re Cohen 586 F. 3d 703 (9th Cir. 2009). In both cases, the Ninth Circuit granted writs of mandamus to review lead plaintiff orders. In both Cavanaugh and Cohen, the

5

Ninth Circuit held that the district court had not followed the PSLRA's mandatory process. In Cavanaugh, the Ninth Circuit held that the district court had rejected the PSLRA's lead plaintiff appointment process and chosen a lead plaintiff based on different fee structures offered by the proposed lead counsel. In Cohen, the district court did not appoint the lead plaintiff's chosen firm as lead counsel. In both cases, the Ninth Circuit held that the district courts contravened the PSLRA's mandatory lead plaintiff and lead counsel selection process. Those circumstances are not applicable here.

9.   It appears to the Court that "rather than advancing the litigation, certification would substantially delay it. . . ." Oxford Health Plans at 53. The fact that none of these questions will advance the termination of this litigation and, instead, are likely to prolong it, merits denial of the Prosperity Group's motion. The Court will also explain, in addition, why each question does not merit certification.

10.  The Prosperity Group asks the Court to certify questions to the Third Circuit that the Court itself did not decide. In the August 22, 2012 Opinion, the Court decided whether the Prosperity Group was subject to unique defenses that would prejudice the class. The Prosperity Group now asks the Court to certify the legal questions underlying those unique defenses. The purpose behind the unique defense analysis is to ensure that

class members are not subject to the time and expense of addressing arguably meritorious defenses unique to the lead plaintiff. The unique defense analysis does not require a final determination that the defense is, in fact, applicable. The point "is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." In re Netflix, Inc., Sec. Litig., 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26, 2012). Certifying this appeal to resolve the underlying legal questions would contravene the purpose of identifying unique defenses.

11.  The Court never decided the Prosperity Group's fourth question, i.e. whether an investment advisor has standing to pursue claims when it has a power of attorney. The Court recognized that the issue was a unique defense and specifically held, "The Third Circuit Court of Appeals has not decided the question of whether an investment advisor who lacks title to claims has standing. The Court does not decide this question here." Steamfitters Local at * 13. The Third Circuit has held that "[i]n the absence of a definitive order . . . by the district court, the inquiry is essentially a request for an advisory opinion, which we may not honor." Link v. Mercedes-Benz of N. Am., Inc., 550 F.2d 860, 862 (3d Cir. 1977). In other words, the Court cannot ask the Third Circuit to certify a

question on which it did not issue a definitive order. The Court had no imperative to decide the question of an investment advisor's standing and, at this time, it cannot ask the Third Circuit to do so.

12.  The Prosperity Group's first question, which involves the necessary showing of proof to establish unique defenses or loss of authority to sue, also presents issues that the Court never decided. The Court based its unique defense analysis solely on the certification that the Prosperity Group's investment manager submitted with the lead plaintiff application and on Prosperity Group's counsel's statements at oral argument. See, e.g., Steamfitters Local at *3 ("PCM has authority to bring a lawsuit, but it has no ownership interest in the claims. (Sinton Cert. ¶ 9; see also oral arg. tr. at 29–31.) The PCM Managed Funds have neither authority to bring lawsuits nor title to the claims. (Oral arg. tr. at 31.)"). Essentially, the Court relied only on the Prosperity Group's admissions and, as a result, had no need to consider the question of what constitutes sufficiency of proof. The Court cannot certify a question that it did not answer. Section 1292(b) "is not intended to grant the appellate courts power to give advice on speculative matters." Link at 863.

13.  Similarly, the Prosperity Group's second question, regarding the requisite level of proof to support an argument regarding authority to sue, presents an issue which the Court did

8

not adjudicate because it was not necessary to its decision. The Court did "not adopt the Magistrate Judge's findings that the Prosperity Group lacks standing and that the Subsidiaries lack authority to sue; those issues are not ripe for review and deciding them is beyond the scope of the motions before the Court." Steamfitters Local at *7. Once again, if the Court were to certify the third question, the Court would be asking the Third Circuit to "give advice on speculative matters."

14.  In addition, the Prosperity Group's second and third questions are not controlling. "A question is controlling if its incorrect disposition would require reversal of the final judgment." Hulmes v. Honda Motor Co., Ltd., 936 F. Supp. 195, 208 (D.N.J. 1996), aff'd, 141 F.3d 1154 (3d Cir. 1998). The second and third questions would not change the Court's August 22, 2012 decision, much less require reversal of the final judgment. The Court did not appoint the Subsidiaries because (1) they did not seek lead plaintiff appointment until after the Magistrate Judge had issued the R&R, and parties must raise all of their arguments when they are before the Magistrate Judge; (2) the Subsidiaries never submitted the certification that the PSLRA requires all lead plaintiff applicants to submit; (3) the Subsidiaries did not ask to be appointed until June 28, 2012, long after the December 23, 2011 application deadline; and (4) there was a question regarding the Subsidiaries' authority to sue that the Court

9

acknowledged but did not decide. The Prosperity Group's questions address the third and fourth reasons that the Court gave for not appointing the Subsidiaries, but not the first two. Therefore, they would not change the Court's August 22, 2012 Opinion and Order, even if they were answered in the Prosperity Group's favor.

15.  The Prosperity Group's Motion for interlocutory appeal will be denied because none of the questions will advance the termination of this litigation; because the Court cannot ask the Third Circuit to issue speculative, advisory opinions on questions the Court did not answer in its original opinion; and because the questions would not change the Court's August 22, 2012 order, much less require reversal of the final judgment.

16.  The accompanying Order is entered.

**November 14, 2012**             **s/ Jerome B. Simandle**
Date            JEROME B. SIMANDLE
           Chief U.S. District Judge